1

# **EXHIBIT 1**

1

#111842583v7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **GORDON SALES, INC. d/b/a GORDON INC.**<br><br>Plaintiff<br><br>v.<br><br>**FRY REGLET CORPORATION, NICHOLAS GREEN, and PATRICK SULLIVAN**<br><br>Defendants | **CIVIL ACTION NO. 1:25-cv-07103-MLB**<br><br><br>**JUDGE: MICHAEL L. BROWN**<br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff Gordon Sales, Inc. d/b/a Gordon Inc. ("Plaintiff" or "Gordon"), for its First Amended Complaint against Defendants Fry Reglet Corporation ("Fry Reglet"), Nicholas B. Green ("Green"), and Patrick C. Sullivan ("Sullivan") (collectively, "Defendants"), alleges as follows:

### THE PARTIES

1. Gordon is a Louisiana corporation with its headquarters in Bossier City, LA.

2. Upon information and belief, Fry Reglet is a Washington corporation with its headquarters in Santa Fe Springs, CA and its principal manufacturing facilities located in Alpharetta, GA.

2

#111842583v7

3.	Upon information and belief, Green is an individual residing in Atlanta, GA, who at all relevant times was employed by Fry Reglet and, in connection with employment discussions with Gordon and a visit to Gordon's facility, entered into a written confidentiality and non-disclosure agreement with Gordon.

4.	Upon information and belief, Sullivan is an individual residing in Covington, GA, who at all relevant times was employed by Fry Reglet and, in connection with employment discussions with Gordon and a visit to Gordon's facility, entered into a written confidentiality and non-disclosure agreement with Gordon.

## JURISDICTION AND VENUE

5.	This Court has jurisdiction over the subject matter of this action upon the following grounds: (a) 28 U.S.C. §§ 1331 and 1338(a), as this matter arises, in part, under the patent laws of the United States and the Defend Trade Secrets Act; (b) supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims, as those state law claims and the federal claims form part of the same case or controversy under Article III of the United States Constitution; and (c) 28 U.S.C. § 1332, as this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

6.	This Court has personal jurisdiction over Fry Reglet because, among other things, Fry Reglet has purposefully availed itself of the rights and benefits of

3

the laws of the State of Georgia by engaging in systematic and continuous contacts with the state such that it should reasonably anticipate being hauled into court here. For example, Fry Reglet is registered to conduct business in Georgia, under Control Number K902644, and, on information and belief, has a regular and established place of business in this District at 1377 Stonefield Court, Alpharetta, GA 30004. Additionally, this Court has personal jurisdiction over Fry Reglet because Fry Reglet, on information and belief, has committed acts of patent infringement and has directed and benefited from the use of Gordon's confidential and trade secret information in this District, including by manufacturing, using, offering for sale, and/or selling the Accused Product in this District.

7.      This Court has personal jurisdiction over Green and Sullivan because, upon information and belief, each is domiciled in the State of Georgia and in this District.

8.      Venue is proper in this Court as to Fry Reglet pursuant to 28 U.S.C. § 1400(b) because Fry Reglet has committed acts of infringement in this judicial District and maintains a regular and established place of business here. Upon information and belief, Fry Reglet operates its principal manufacturing facilities at 1377 Stonefield Court, Alpharetta, GA 30004, which constitute a physical, regular, and established place of business in this District from which Fry Reglet has committed, and continues to commit, acts of infringement of the Asserted Patent,

4

#111842583v7

including by manufacturing, using, offering for sale, and/or selling the Accused Product.

9.     Venue is proper in this Court as to all Defendants under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events or omissions giving rise to Gordon's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

10.     Gordon repeats and incorporates by reference the allegations of paragraphs 1–9 above.

11.     Gordon is an innovator in the field of architectural interior construction products, including expandable wall gap filler assemblies used to address gaps between interior partition walls and adjacent building structures.

12.     In or around April 2021, Gordon, through its inventor Imack Laydera-Collins, conceived a new wall gap filler product utilizing expandable foam sound insulation material as a biasing member within a telescoping wall gap filler assembly. The technology involved, among other things, the use of expandable foam sound insulation material in place of conventional spring-based systems to generate an expansive force for securing a wall gap filler assembly between an interior partition wall and an adjacent exterior wall, window assembly, or mullion. At the time of its development, the foregoing concept, associated product designs implementing that concept, and related development efforts were not publicly

5

#111842583v7

known and constituted confidential and proprietary information belonging to Gordon (collectively, the "Gordon Technology").

13. To protect the Gordon Technology, Gordon filed U.S. Provisional Patent Application No. 63/190,851 titled "Telescoping Wall Gap Closure" on May 20, 2021, and subsequently filed additional patent filings resulting in the issuance of U.S. Patent No. 12,024,881 (the "Parent Patent") and U.S. Patent No. 12,442,181 (the "Asserted Patent").

14. Gordon began prototype testing of embodiments employing expandable foam sound insulation material on or about June 17, 2021. Gordon thereafter continued developing and refining the technology through prototype development, testing, engineering work, and commercialization efforts.

15. The first commercial sale of a product embodying the expandable-foam technology occurred on or about May 14, 2024.

16. Prior to commercialization of products embodying the technology and prior to public disclosure through issued patents, Gordon maintained the Gordon Technology, including product design, functionality, and implementation details, as confidential and proprietary information. Access to the Gordon Technology was restricted to individuals with a business need to know such information, and Gordon required third parties, including prospective employees and business visitors, to

6

execute confidentiality and nondisclosure agreements before receiving access to such information.

17.    In or around September 2022, Green and Sullivan, while employed by Fry Reglet, engaged in employment discussions with Gordon and visited Gordon's facility in furtherance of those discussions.  At the time Green and Sullivan were provided access to the Gordon Technology, the Gordon Technology had not been publicly disclosed by Gordon and constituted confidential and proprietary information belonging to Gordon.

18.    As a condition of those discussions and visits, Green and Sullivan each entered into written confidentiality and non-disclosure agreements with Gordon (the "NDAs"). A true and correct copy of the "Third-Party Confidentiality Agreement" between Gordon and Green is attached as Exhibit A. A true and correct copy of the "Third-Party Confidentiality Agreement" between Gordon and Sullivan is attached as Exhibit B.

19.    After execution of the NDAs, Gordon provided Green and Sullivan with a tour of its facility, during which they were given access to non-public information concerning the Gordon Technology, including Gordon's development of a wall gap filler assembly utilizing expandable foam sound insulation material as a biasing member in place of conventional spring-based systems.

#111842583v7

20. In or around January 2023, Green and Sullivan informed Gordon that they were no longer interested in employment with Gordon but instead would remain employed by Fry Reglet.

21. On information and belief, Green and Sullivan, without authorization from Gordon, disclosed the Gordon Technology to Fry Reglet and other of its employees.

22. Upon information and belief, after receiving the Gordon Technology from Green and Sullivan, Fry Reglet used that information to accelerate its development of wall gap filler products utilizing expandable foam sound insulation material as a biasing member. Although the Gordon Technology would eventually become publicly available through Gordon's commercialization efforts and patent disclosures, Fry Reglet's unauthorized use of the Gordon Technology provided Fry Reglet with a substantial head start in developing, marketing, and commercializing competing products.

23. On information and belief, Fry Reglet knew or should have known that the Gordon Technology disclosed by Green and Sullivan belonged exclusively to Gordon and was considered proprietary and confidential, yet nonetheless used that information to develop and commercialize a competing wall gap filler product.

24. In or around March 2024 at a Ceilings and Interior Systems Construction Association ("CISCA") trade show, Fry Reglet publicly exhibited a

8

wall gap filler product with expandable foam sound insulation that embodied features of the Gordon Technology.

25. Shortly thereafter, Gordon notified Green and Sullivan of their obligations under the NDAs, and Fry Reglet ceased promoting or exhibiting its new product.

26. In or around the fall of 2025, Fry Reglet re-entered the market with a wall gap filler product with expandable foam sound insulation marketed under the name "MullionFlex" (the "Accused Product").

27. On information and belief, the Accused Product embodies the Gordon Technology and includes features that are the subject of one or more claims of the Asserted Patent.

**COUNT I: PATENT INFRINGEMENT**
**(Against Fry Reglet)**

28. Gordon repeats and incorporates by reference the allegations of paragraphs 1–27 above.

29. On October 14, 2025, the U.S. Patent and Trademark Office duly and legally issued the Asserted Patent, titled "Telescoping Wall Gap Filler Assembly." A true and correct copy of the Asserted Patent is attached as Exhibit C. The claims of the Asserted Patent are drawn to a gap filler assembly for filling or covering a gap between an interior partition wall and an exterior wall of a building. The claims of

9

the Asserted Patent carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

30. Gordon is the owner of the entire right, title, and interest in the Asserted Patent by assignment, and possesses the right to sue for and obtain equitable relief and damages for infringement of the Asserted Patent.

31. On information and belief, Fry Reglet has directly infringed and continues to directly infringe the Asserted Patent by making, using, selling, and offering for sale in the United States (and in this District), and/or importing into the United States the Accused Product (an example of which is shown in the drawing attached as Exhibit D) embodying the invention defined by one or more claims of the Asserted Patent, without authority or license from Gordon. More particularly, on information and belief and after a reasonable investigation, Fry Reglet has infringed and continues to infringe at least Claim 1 of the Asserted Patent because the Accused Product includes every limitation of Claim 1.

32. Claim 1 of the Asserted Patent recites (wherein the bracketed letter/numbers are included for ease of reference):

| [P] | 1. A gap filler assembly for filling or covering a gap between an interior partition wall and an exterior wall of a building structure, the gap filler assembly comprising: |
|---|---|
| [1] | a first frame member slidingly engaging a second frame member; |

10

| [2] | an interior cavity defined by the first and second frame members, wherein the interior cavity has a variable volume; and |
|---|---|
| [3] | a biasing member comprising expandable foam sound insulation material disposed within the interior cavity, wherein the expandable foam sound insulation material has a first end engaging an interior surface of the first frame member, wherein the expandable foam sound insulation material has a second end engaging an interior surface of the second frame member, and wherein the expandable foam sound insulation material is configured to exert a force on the first frame member in a direction away from the second frame member for compressing the first and second frame members between the interior partition wall and the exterior wall. |

33.    The Accused Product includes a first frame member slidingly engaging a second frame member, all of which corresponds to element [1] as recited in Claim 1. *See*, Exhibit D.

34.    The Accused Product includes an interior cavity defined by the first and second frame members, wherein the interior cavity has a variable volume, all of which corresponds to element [2] as recited in Claim 1. *See*, Exhibit D.

35.    The Accused Product includes a biasing member comprising expandable foam sound insulation material disposed within the interior cavity, wherein the expandable foam sound insulation material has a first end engaging an interior surface of the first frame member, wherein the expandable foam sound insulation material has a second end engaging an interior surface of the second frame

11

member, and wherein the expandable foam sound insulation material is configured to exert a force on the first frame member in a direction away from the second frame member for compressing the first and second frame members between the interior partition wall and the exterior wall, all of which corresponds to element [3] as recited in Claim 1. *See*, Exhibit D.

36.    Upon a reasonable opportunity for discovery, it is anticipated that Gordon will identify additional claims of the Asserted Patent infringed by the Accused Product and/or identify additional products made, used, offered for sale, or sold by Fry Reglet that infringe the Asserted Patent.

37.    Gordon has complied with the marking and notice requirements of 35 U.S.C. § 287.

38.    Gordon has suffered and continues to suffer injury, including irreparable injury, as a result of Fry Reglet's infringement. Gordon is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Fry Reglet from infringing the Asserted Patent in accordance with 35 U.S.C. § 283.

39.    Because of Fry Reglet's infringement, Gordon is suffering and will continue to suffer substantial damages in an amount to be determined at trial. In accordance with 35 U.S.C. § 284, Gordon is entitled to recover damages adequate to compensate it for Fry Reglet's infringement, together with interest and costs as fixed by the Court.

#111842583v7

40.    Fry Reglet's infringement of the Asserted Patent is willful and deliberate, entitling Gordon to enhanced damages under 35 U.S.C. § 284.

41.    Fry Reglet's infringement of the Asserted Patent is exceptional, entitling Gordon to attorney's fees incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II: BREACH OF CONTRACT
### (Against Green and Sullivan)

42.    Gordon repeats and incorporates by reference the allegations of paragraphs 1–41 above.

43.    Green and Sullivan each entered into valid and enforceable NDAs with Gordon.

44.    Under the NDAs, Green and Sullivan agreed, among other things, to maintain the confidentiality of Gordon's confidential and proprietary information, such as the Gordon Technology, and to refrain from disclosing or using such information for any unauthorized purpose.

45.    Green and Sullivan breached the NDAs by disclosing and using the Gordon Technology for the benefit of Fry Reglet without Gordon's authorization.

46.    Gordon is entitled to recover damages caused by Green and Sullivan's breaches of their obligations under the NDAs in an amount to be determined at trial, together with attorneys' fees and costs in pursuing this action.

13

47.    Gordon further seeks appropriate equitable relief to prevent further breaches of the NDAs and to preclude the continued use of confidential information obtained pursuant to the NDAs.

## COUNT III: VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (Against All Defendants)

48.    Gordon repeats and incorporates by reference the allegations of paragraphs 1–47 above.

49.    At all relevant times, the Gordon Technology was a trade secret within the meaning of 18 U.S.C. § 1839 because it derived independent economic value from not being generally known to, and not being readily ascertainable by, others who could obtain economic value from its disclosure or use.

50.    At all relevant times, Gordon took reasonable measures to maintain the secrecy of the Gordon Technology, including restricting access to such information and requiring confidentiality and non-disclosure agreements.

51.    The Gordon Technology is used in, and intended for use in, interstate commerce.

52.    On information and belief, Green and Sullivan misappropriated the Gordon Technology by disclosing the Gordon Technology to Fry Reglet and by using the Gordon Technology without Gordon's authorization and in breach of their duties to Gordon.

14

53.    On information and belief, Fry Reglet misappropriated the Gordon Technology by using the Gordon Technology to develop and commercialize wall gap filler products with expandable foam sound insulation embodying the Gordon Technology without Gordon's authorization and knowing or having reason to know that such information was unlawfully derived from Gordon and subject to a duty of confidentiality.

54.    Defendants' acquisition and use of the Gordon Technology advantaged Fry Reglet, and disadvantaged Gordon, by providing Fry Reglet with a head start so it could beat Gordon to the market with wall gap filler products embodying the Gordon Technology.

55.    As a direct and proximate result of Defendants' misappropriation, Gordon has suffered damages, including the loss of competitive advantage, lost business opportunities, and other economic harm.

56.    Gordon is entitled to recover damages for Defendants' misappropriation of its trade secrets, including actual damages and unjust enrichment, in accordance with 18 U.S.C. § 1836(b)(3)(B).

57.    On information and belief, Defendants' misappropriation has been willful and malicious entitling Gordon to exemplary damages and attorneys' fees as permitted by 18 U.S.C. § 1836.

15

58.    Gordon is further entitled to injunctive relief to prevent any actual or threatened misappropriation and to remedy the effects of Defendants' misappropriation in accordance with 18 U.S.C. § 1836(b)(3)(A).

## COUNT IV: VIOLATION OF GEORGIA TRADE SECRETS ACT
### (Against All Defendants)

59.    Gordon repeats and incorporates by reference the allegations of paragraphs 1–58 above.

60.    At all relevant times, the Gordon Technology was a trade secret within the meaning of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-761 because it derived independent economic value from not being generally known or readily ascertainable by others and was the subject of Gordon's reasonable efforts to maintain its secrecy, including restricting access to such information and requiring confidentiality and non-disclosure agreements.

61.    On information and belief, Defendants misappropriated the Gordon Technology as alleged in paragraphs 52 and 53 hereinabove in violation of the Georgia Trade Secrets Act.

62.    Defendants' acquisition and use of the Gordon Technology advantaged Fry Reglet, and disadvantaged Gordon, by provided Fry Reglet with a head start so it could beat Gordon to the market with wall gap filler products embodying the Gordon Technology.

#111842583v7

63. As a direct and proximate result of Defendants' misappropriation, Gordon has suffered damages, including the loss of competitive advantage, lost business opportunities, and other economic harm.

64. Gordon is entitled to recover damages and any unjust enrichment resulting from Defendants' misappropriation of its trade secrets in accordance with O.C.G.A. § 10-1-763, or, in the alternative, a reasonable royalty for Defendants' unauthorized use of the Gordon Technology.

65. On information and belief, Defendants' misappropriation has been willful and malicious, entitling Gordon to exemplary damages and attorneys' fees as permitted by O.C.G.A. § 10-1-763 and § 10-1-764.

66. Gordon is further entitled to injunctive relief to prevent actual or threatened misappropriation and to remedy the effects of Defendants' misappropriation in accordance with O.C.G.A. § 10-1-762.

## COUNT V: VIOLATION OF LOUISIANA UNIFORM TRADE SECRETS ACT
### (Against All Defendants)

67. Gordon repeats and incorporates by reference the allegations of paragraphs 1–66 above.

68. At all relevant times, the Gordon Technology was a trade secret within the meaning of the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq.* because it derived independent economic value from not being generally known or

17

readily ascertainable by others and was the subject of reasonable efforts to maintain its secrecy, including restricting access to such information and requiring confidentiality and non-disclosure agreements.

69. On information and belief, Defendants misappropriated the Gordon Technology as alleged in paragraphs 52 and 53 hereinabove in violation of the Louisiana Trade Secrets Act.

70. Defendants' acquisition and use of the Gordon Technology advantaged Fry Reglet, and disadvantaged Gordon, by provided Fry Reglet with a head start so it could beat Gordon to the market with wall gap filler products embodying the Gordon Technology.

71. As a direct and proximate result of Defendants' misappropriation, Gordon has suffered damages, including the loss of competitive advantage, lost business opportunities, and other economic harm.

72. Gordon is entitled to recover damages and any unjust enrichment resulting from Defendants' misappropriation in accordance with La. R.S. 51:1433.

73. Defendants' misappropriation entitles Gordon to attorneys' fees as permitted by La. R.S. 51:1434.

74. Gordon is further entitled to injunctive relief to prevent actual or threatened misappropriation and to remedy the effects of Defendants' misappropriation pursuant to La. R.S. 51:1432.

## PRAYER FOR RELIEF

WHEREFORE, Gordon respectfully prays that this Court enter judgment in its favor against Defendants, jointly and severally, and grant the following relief:

1.      Judgment that Fry Reglet has infringed one or more claims of the Asserted Patent, that Green and Sullivan have breached their obligations under the NDAs, and that Defendants have misappropriated Gordon's trade secrets in violation of the Defend Trade Secrets Act, the Georgia Trade Secrets Act, and the Louisiana Uniform Trade Secrets Act;

2.      An order permanently restraining and enjoining Fry Reglet, its officers, directors, agents, attorneys, members, managers, employees, affiliates, representatives, parents, subsidiaries, successors, and assigns, and those acting in privity or concert with Fry Reglet, from engaging in the manufacture, use, offer for sale or sale within the United States, or importation into the United States, of any product covered by the Asserted Patent, including but not limited to the Accused Product, or otherwise infringing the Asserted Patent, until after the expiration date of the Asserted Patent;

3.      An order restraining and enjoining Defendants from further use or disclosure of Gordon's trade secrets and from continuing to derive any commercial or developmental advantage from their misappropriation of those trade secrets;

19

4.    Damages or other monetary relief to Gordon, including damages for patent infringement, damages and unjust enrichment for trade secret misappropriation, and damages resulting from Green and Sullivan's breaches of their obligations under the NDAs;

5.    Exemplary or enhanced damages as permitted by law;

6.    Costs and reasonable attorneys' fees as permitted by law and the NDAs;

7.    An award of pre- and post-judgment interest as allowed by law; and

8.    Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Gordon demands a trial by jury on all issues that are so triable.

#111842583v7

Respectfully submitted,

JONES WALKER LLP

Dated: July 15, 2026

*/s/ Neal J. Sweeney*
Neal J. Sweeney (Ga. Bar No. 694725)
Jack Mayo (Ga. Bar No.546911)
3455 Peachtree Road NE, Suite 1400
Atlanta, GA 30326
Tel:   (404) 870-7516
Fax:   (404) 870-7571
Email:  nsweeney@joneswalker.com
          jmayo@joneswalker.com

*/s/ Michael K. Leachman*
Michael K. Leachman (La. Bar No. 30158)
(admitted *Pro Hac Vice*)
Olivia G. Wolf (La Bar No. 40385)
(admitted *Pro Hac Vice*)
445 North Boulevard, Suite 800
Baton Rouge, LA 70802
Tel.:   (225) 248-2000
Fax:   (225) 248-2010
Email:  mleachman@joneswalker.com
          owolf@joneswalker.com


***Attorneys for Plaintiff Gordon Sales, Inc.
d/b/a Gordon Inc.***

#111842583v7

22

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Michael K. Leachman*
Michael K. Leachman

22

#111842583v7