# EXHIBIT B

## THIRD-PARTY CONFIDENTIALITY
## AGREEMENT

THIS CONFIDENTIALITY AGREEMENT (the "Agreement") is dated _September 16__, 2022_ (the "Effective Date"), by and Gordon Sales, Inc., (the "Company"), 5023 Hazel Jones Road., Bossier City, LA 71111 (the "Company"), and __Patrick C. Sullivan__, ("Recipient").

## RECITALS

WHEREAS, the Company is engaged in the design, manufacturing and marketing of sustainable architectural metal products for interior and exterior applications, including but not limited to specialty metal ceilings and wall systems, drywall and plaster trims, column covers, and many other architectural specialty products, which are designed for commercial, acoustical, educational, cleanroom, data center, healthcare, correctional, industrial, and institutional environments (the "Business");

WHEREAS, Company and Recipient are prepared to enter into discussions with respect to the Company's engagement of Recipient to provide various services to the Company (the "Engagement"), and during the course of the Engagement, the Company may disclose and make available to Recipient and its Representatives (as defined below) certain Confidential Information (as defined below), the Company and Recipient agree as follows:

1. **Confidential Information.** As used herein, the term "Confidential Information" shall include all such information furnished to Recipient or its Representatives by or on behalf of the Company in connection with the Engagement (irrespective of the form of communication or the storage media in which it is contained), and all notes, compilations, summaries, analyses, studies, memoranda, reports, interpretations or other documents prepared by Recipient or its Representatives containing, derived from or based in whole or in part on any such furnished information. The term "Confidential Information" shall include, but not limited to, business plans and strategies; business processes; research and development; training and other operational methods and techniques; operational manuals, policies, and procedures; business records and files; employee records, including wage information; business proposals; client lists; client information; client source lists; pricing; sales plans and activities; customer service strategies or activities; marketing and other technical data and studies; financial plans, reports, and strategies; profits and losses; budgets; projections; price lists; sales, promotional, and marketing strategies and information; proprietary computer software and data; and internal correspondence, notes, and memoranda relating to any of the foregoing. However, Confidential Information does not include information that is or becomes (a) generally available to the public other than as a result of a disclosure by Recipient or its Representatives in violation of this letter agreement; (b) available to Recipient or is in or comes into the possession of Recipient on a non-confidential basis from a source other than the Company or its representatives or advisors, provided that disclosure by such source is not known by Recipient to be in breach of an obligation of confidentiality to the Company; or (c) approved by the Company for disclosure in advance.

2. **Non-Disclosure and Non-Use of Confidential Information.** Except as set forth below, Recipient shall (a) use the Confidential Information solely for the purpose of the

{B1330443.1}

Engagement and for no other purpose; (b) not use the Confidential Information in any manner detrimental to the Company; (c) not disclose the Confidential Information to any third party except for disclosures to Recipient's directors, officers, employees, and consultants (collectively referred to as its "Representatives") who in Recipient's reasonable judgment need to know such information for the purpose of the Engagement; (d) prior to disclosing Confidential Information to its Representatives, require such Representatives to be bound by the applicable terms of this letter agreement to the fullest extent as if they were parties hereto; (e) take reasonable precautions necessary to prevent the disclosure of the Confidential Information by its Representatives to any third party; and (f) be responsible for any breach of this letter agreement by its Representatives.

**3. Request to Disclose Confidential Information.** If Recipient or its Representatives is requested (by law, judicial or governmental order, interrogatory, request for information or documents, subpoena, civil investigative demand or similar process) to disclose any Confidential Information, Recipient will provide the Company with reasonably prompt notice of such request so that the Company may seek an appropriate protective order or other remedy. If in the absence of a protective order or remedy, Recipient or its Representatives is nonetheless compelled to disclose any such Confidential Information, or is otherwise permitted to make such disclosure hereunder, then Recipient or its Representatives may disclose only that portion of the Confidential Information that Recipient is advised by counsel is legally required to be disclosed, provided that Recipient provides the Company written notice of the Confidential Information to be disclosed as promptly as reasonably practicable.

Pursuant to 18 USC § 1833(b), an individual may not be held criminally or civilly liable under any federal or state trade secret law for disclosure of a trade secret: (i) made in confidence to a government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; and/or (ii) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Additionally, an individual suing an employer for retaliation based on the reporting of a suspected violation of law may disclose a trade secret to his or her attorney and use the trade secret information in the court proceeding, so long as any document containing the trade secret is filed under seal and the individual does not disclose the trade secret except pursuant to court order.

**4. No License to Confidential Information; Ownership of Derived Property.** All Confidential Information remains the property of Company and no license or other rights to Confidential Information is granted or implied hereby. Recipient will not file any copyright registrations, patent applications or similar registrations of ownership on the Confidential Information. In the event Recipient does so in violation of this Agreement, Recipient will assign to Company such registrations and applications. Subject to Recipient's preexisting patents and copyrights, Company is free to use and incorporate in Company's products any ideas, suggestions, or recommendations provided by Recipient, without payment or royalties or other considerations to Recipient. It is further understood that the ownership of any and all patents, trademarks, copyrights or trade secrets relating to or derived from Company's Confidential Information (hereinafter referred to as "Derived Property") shall be owned exclusively by Company. In the event that the proprietary rights in the Derived Property do not automatically vest in Company, Recipient hereby assigns to Company, for no additional consideration, any and all interest that it may possess in such Derived Property.

**5. No Warranty.** All information, including Confidential Information, is provided to Recipient "AS IS," and without any warranty, whether express or implied, as to the accuracy or completeness.

**6. Return of Company Property.** Company shall retain title to all Confidential Information whether disclosed by it or compiled by Recipient. Upon the request of Company at any time, Recipient shall either destroy or return immediately, at the choice of Company, the Confidential Information and all copies thereof without retaining any copies, notations, reproductions, facsimiles, analyses or summaries thereof. Recipient shall, at Company's request, certify in writing that the provisions of the preceding sentence have been complied with. Notwithstanding the return or destruction of the Information and related materials, you will continue to be bound by the confidentiality, non-use and other obligations hereunder.

**7. Term.** The provisions of this Agreement shall inure to the benefit of all of Company's successors and assigns and shall survive the termination of the Engagement between Company and Recipient. Additionally, Recipient's obligation contained herein shall not be affected by bankruptcy, receivership, assignment, attachment, or seizure procedures, whether initiated by or against Recipient, nor by the rejection of any agreement between Company and Recipient, by a Trustee of Recipient in bankruptcy, or by the Recipient or a debtor- in-possession or the equivalent of the foregoing under local law.

**8. No Export.** Recipient certifies that no Confidential Information, or any portion thereof, will be exported to any country in violation of the United States Export Administration Act and regulations thereunder, or any other applicable export control laws or regulations.

**9. Breach and Remedies.** Recipient acknowledges that a breach or threatened breach of Recipient's obligations under this Agreement would cause immediate and irreparable harm to the Company for which an adequate monetary remedy does not exist. For this reason, the Company shall be entitled, in addition to other rights and remedies, to injunctive relief to prevent or restrain such breach or threatened breach. Recipient agrees that, in the event of any such breach or threatened breach, the Company shall be entitled to temporary, preliminary, and/or permanent injunctive relief restraining the Recipient from such breach or threatened breach, and/or compelling or ordering the Recipient's compliance with this Agreement, without the necessity of proof of actual damage or the posting of any security or bond, except as required by any non-waivable, applicable law. Nothing herein, however, shall be construed as prohibiting the Company from pursuing any other remedy at law or in equity to which the Company may be entitled in the event of a breach or threatened breach by the Recipient, including, without limitation, the recovery of damages, penalties, attorneys' fees, lost profits, costs, and expenses incurred by the Company as a result.

In the event of any such breach or threatened breach of this Agreement, if Company institutes any action against Recipient to enforce any terms or provisions this Agreement, and prevails in such action, Company shall be entitled to receive from the Recipient in the action its reasonable attorneys' fees incurred in such action and all costs and expenses incurred in connection therewith.

{B1330443.1}

**10. Modifications; Waivers.** No provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by Recipient and an executive officer of the Company. No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise express or implied, with respect to the subject matter hereof have been made by either party that are not set forth expressly in this Agreement.

**11. Validity and Reformation.** The invalidity or unenforceability of any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect, provided, however, that a court of competent jurisdiction may, if and to the extent permitted by law, sever, amend, reform, revise, or modify any provision or provisions deemed overly broad, invalid, or otherwise unenforceable to render such provision or provisions valid and enforceable, and the parties acknowledge their intent and agree that the provisions of this Agreement shall be enforced to the fullest extent allowed by applicable law.

**12. No Publicity.** Recipient agrees not to disclose its participation in this Engagement, the existence or terms of this Agreement, or the fact that Recipient is in discussions with Company, unless expressly authorized to do so by Company

**12. Entire Agreement.** This Agreement sets forth the entire agreement of the parties hereto in respect of the subject matter contained herein and supersedes all prior agreements, promises, covenants, arrangements, communications, representations or warranties, whether oral or written, by Recipient or any officer, employee or representative of the Company, and any prior agreement of the parties hereto in respect of the subject matter contained herein is hereby terminated and canceled in its entirety, except as otherwise provided herein.

**13. Governing Law.** This Agreement shall be construed and enforced in accordance with and governed by the internal laws of the State of Louisiana without regard to principles of conflict of laws except to the extent that federal law applies.

IN WITNESS WHEREOF, this Agreement is executed as of the date first written above.

**COMPANY:**

By: _____

Print Name:    Paul Pinholster
Title: Global Director - Sales & Mktg.

**RECIPIENT:**

Signature: _____
Print Name:  Patrick C. Sullivan